# IN THE COURT OF APPEALS OF IOWA

No. 23-1337
Filed November 8, 2023

**IN THE INTEREST OF S.H.,**
**Minor Child,**

**D.S., Mother,**
      Appellant,

**T.H., Father,**
      Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie J. Bryner, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**


Annette F. Martin, Cedar Rapids, for appellant mother.

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Natalie Jean Hedberg, Assistant Attorney General, for appellee State.

Julie Gunderson Trachta of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.


Considered by Badding, P.J., Buller, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BLANE, Senior Judge.**

The parents of S.H. separately appeal the termination of their parental rights. They contend that the State failed to prove the statutory grounds for termination, termination was not in S.H.'s best interests, and an exception applies to prevent termination. We find no merit in any contention and affirm termination on both appeals.

## I. Facts and Prior Proceedings

S.H. was born in 2008. This is the third time she has been the subject of a child-in-need-of-assistance (CINA) proceeding.[1] The court removed her from parental care in February 2022 when her father, Tony, took her to buy illegal drugs and then smoked the drugs in their van with her present. Tony and S.H. were living with Tony's mother at the time. Tony has legal custody through an order in the district court.[2] During the child abuse investigation, S.H. disclosed that in January, her mother, Deb, left her alone in a hotel room where they were staying with an adult acquaintance, Kevin, who started rubbing S.H.'s arms and legs. The department believed the man was grooming S.H. for sexual abuse. Deb later sent S.H. a long text blaming her for the incident with Kevin based on her clothing and behavior and chastising her for disclosing the incident to authorities. After removal, S.H. went to live with her adult half-sister and her husband, where she has remained throughout this case.[3]

---

[1] The previous CINA's were in 2009 and 2016. The mother also has four other children who are no longer in her custody.

[2] At the time of the hearing, Tony was sixty-eight years of age.

[3] Both precipitating incidents were brought to light by S.H.'s adult half-sister, who often cared for S.H. when either her father or her grandmother were unable.

Both parents completed court-ordered substance-abuse evaluations but were inconsistent with follow-up care and drug testing. Deb's evaluation stated no recommended treatment, but she regularly tested positive for methamphetamine and marijuana in random drug tests throughout the case.[4] Deb has a laundry list of physical ailments for which she is prescribed numerous medications, including oxycodone. Tony's evaluation recommended outpatient treatment, but he did not do that. He also never took a drug test.[5]

Tony also never did an ordered mental-health evaluation. Deb completed an evaluation that recommended individual counselling. But Deb has been seeing a therapist since before this case. The court reviewed paperwork and a letter from her therapist, Mindy O'Leary. O'Leary testified that she has been treating Deb off-and-on for twenty-five years. In the letter she expressed concerns about the department's interference with Deb's family. She described Deb as a good parent and contradicted factual statements in the GAL report. And she questioned S.H.'s diagnoses and treatment with her mental-healthcare providers. She also questioned whether the sexual grooming took place and asked for "proof." Still, her testimony was that she had not seen S.H. in several years and only very briefly before that. When asked, she described herself as both Deb's therapist and friend and agreed she had attended social events with Deb in the past. Even so, in her

---

[4] Deb claimed the test was positive for methamphetamine because she had been taking Sudafed.

[5] Tony claimed he was drug tested through his employment, although those results were never produced and he was not working much of the time this case was pending.

testimony, O'Leary opined that she didn't believe S.H. could presently be returned to Deb's care as she would not be able to provide appropriate resources.

The parents continue to blame S.H. for the removal and say she is lying about the inappropriate touching from Kevin. Tony also said she made up his drug use because she didn't want to live with him. Deb testified expressing skepticism that the incidents with Tony using drugs in front of S.H. and with Kevin touching S.H. inappropriately actually happened. The department case manager testified that, during a break in testimony, Deb told S.H. not to say anything negative about Kevin or herself when it was her turn to testify.[6]

Visitations have not gone well and have never progressed beyond the fully supervised stage. Tony consistently showed up late and left early. At the time of the termination hearing, he had not seen S.H. in two months. Deb has not attended consistently either. Deb's behavior throughout the case was erratic and disordered. She has multiple mental-health diagnoses and sought treatment but continued to act out and bring up inappropriate topics at visitation. There is a no-contact order between the parents and S.H.'s placement because of threats the parents have made. Tony said he is self-employed as a mechanical contractor but did not disclose his income. He continues to live with his elderly mother. When asked about supporting S.H., Tony complained that he could not afford to give her part of his $800 monthly social security he lives on. Deb lives with another adult daughter and does not have her own housing or employment. According to Deb, her contribution to supporting S.H. is $10 per month.

---

[6] S.H. did not testify.

S.H.'s guardian ad litem (GAL) reported S.H. feels secure in the home of her adult sister. S.H. has been seeing a therapist and is up-to-date on her health and dental needs. She loves her parents but believes she will not be safe in their care due to their unmet mental-health and substance-abuse needs. She wants parental rights to be terminated so she can be adopted by her sister and her husband.

The State petitioned to terminate parental rights in January 2023. The termination hearing was held in March, and the court ordered parental rights terminated in August. The court terminated both parents' rights under Iowa Code section 232.116(1)(e) and (f) (2023). The parents appeal separately.

## II. Standard of Review

We review termination decisions de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We will uphold an order when there is clear and convincing evidence of the statutory grounds for termination. *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

## III. Statutory Grounds

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *P.L.,* 778 N.W.2d at 39. We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.*

Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But when the parent does not raise a claim relating to one of the three steps, we limit our review to the claims presented. *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

The juvenile court terminated the parents' rights on two grounds. We need only find sufficient proof of one ground to affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (f). The parents contest only the final element of the statutory ground in paragraph (f), that the child cannot be returned to their custody at the present time. Iowa Code § 232.116(1)(f)(4); *see In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" to mean the date of termination hearing).

Tony argues he has a stable residence, has addressed his substance-abuse, and is able to financially support his child. While it appears Tony has a stable residence at his mother's house, the State proved that he cannot resume care of S.H. at the present time. He has unaddressed substance-abuse and mental-health issues. And Tony admits he "understands he cannot actively engage in substance abuse and properly parent S.H." Yet he has never drug tested for the department and has not sought any substance-abuse treatment despite the recommendation that he do outpatient treatment. He also never obtained a mental-health evaluation. And it is not clear that he can financially

support S.H. because he claimed both to be working and unable to work after he was struck by a car while walking across a road.[7]

Deb argues she has stable housing and attends to her mental-health needs. She also claims to have clean drug tests. But she submitted seven positive drug tests in the three months before the termination hearing. And while Deb argues she is seeing a therapist, the juvenile court found "O'Leary's testimony to be colored by her friendship" with Deb and did not "give it much weight." Upon our review, we agree. O'Leary's observations are limited to what Deb has told her, and their therapy has not stabilized Deb's behavior or contributed to her sobriety in twenty-five years, so we too find it deserves no weight. Deb also has no home of her own if S.H. were returned to her and no employment to support her.

Finally, both parents fail to acknowledge or show sufficient care for S.H. regarding the trauma of witnessing her father abuse drugs and experiencing inappropriate physical contact from an adult her mother exposed her to. Both parents think S.H. is lying and neither shows no genuine interest in protecting her from like harm. The State proved she cannot be returned to parental care at the present time.

### IV. Best Interests

Next, the parents argue that termination is not in the child's best interests. To determine whether termination is in the child's best interests, we consider her safety, as well as the best placement for furthering her "long-term nurturing and

---

[7] This occurred on February 1, 2023, two months before the termination hearing. Tony also claimed that while the case was pending, he was involved in a traffic collision on the interstate and sustained injuries that prevented him from working.

growth" and "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). Neither parent has done anything to curb their substance-abuse or mental-health concerns. They have continually put themselves first and disregarded S.H.'s needs. Her best interests, both long- and short-term require termination of their parental rights. S.H., now a teenager, also prefers termination of their rights, so she can be adopted by her sister and her husband. *See* id. § 232.116(2)(b)(2) (permitting consideration of the "reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference"). We find she is intelligent and mature enough to give her opinion weight in our decision. She has been doing very well in her sister and brother-in-law's home, and they want to adopt her. Before and after removal, they consistently looked out for her best interests to an extent that her parents have not. *See id.* § 232.116(2)(b) (requiring consideration of the child's integration into the foster family and whether the foster family is able and willing to provide a permanent home to the child). After well over a year, the parents have achieved no progress, and S.H.'s best interests will be best served by termination.

## V. Statutory Exception

Finally, the parents argue their strong bond with S.H. should preclude termination. Section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The parents bear the burden to persuade us to apply this factor. *A.S.*, 906 N.W.2d at 475–76. S.H. expressed that she loves her parents, and they each testified they love her. But they have not shown a bond strong enough that it would be to S.H.'s

detriment if broken. As an example, the parents were inconsistent with visitation. Tony had not set up a visitation for two months before the termination hearing. And he consistently showed up late and left early from those visits. Providers also noted little bond between S.H. and Deb during visits. They observed S.H. does not talk to her mother about anything personal or important and that Deb "talks at" S.H. rather than with her. The parents have not carried their burden to prove the statutory exception.

Finding no grounds of merit in either appeal, we affirm.

**AFFIRMED ON BOTH APPEALS.**